**MOLOKAI HOMESTEADERS COOPERATIVE ASSOCIATION and Life of the Land, Plaintiffs,**

v.

**Rogers B. MORTON, Individually and in his capacity as Secretary, United States Department of the Interior, and Sunao Kido, Individually and in his capacity as Chairman, Board of Land and Natural Resources, State of Hawaii, Defendants,**

and

**Kaluakoi Corporation, a Hawaii corporation, Defendant-Intervenor.**

**Civ. No. 73-3745.**

United States District Court, D. Hawaii.

March 12, 1973.

will, to stand trial before a jury dressed in striped prison garb \* \* \*."

Philip D. Bogetto, Law Offices of David C. Schutter, Honolulu, Hawaii, for plaintiffs.

William C. McCorriston, Asst. U. S. Atty., Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, Warren H. Higa, Deputy Atty. Gen., George Pai, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants.

Wendell H. Marumoto, Padgett, Greeley, Marumoto & Steiner, Honolulu, Hawaii, for defendant-intervenor.

## ORDER DENYING PRELIMINARY INJUNCTION

SAMUEL P. KING, District Judge.

Plaintiffs seek a preliminary injunction to prevent the Chairman of the Board of Land and Natural Resources, State of Hawaii, from entering into an agreement with Kaluakoi Corporation, a private business corporation, for the use of the pipeline and other facilities of the Molokai Irrigation System.[1]

---

1. Exhibit D-3 sets out the terms of the proposed agreement in letter form. Briefly, Kaluakoi Corporation is to pay to the Department of Land and Natural Resources about $45,000 annually for 20 years for the right to inject water from two wells owned or controlled by the corporation into the Molokai [Irrigation] Water System pipeline at points some miles upstream from the system's 1,400 million gallon reservoir and remove a lesser amount of water from the pipeline at a point some miles downstream from the reservoir. The amount of water injected is to be 110% of the amount withdrawn to compensate for system losses.

Plaintiffs allege four causes of action, one based upon 43 U.S.C. § 422e of the Small Reclamation Projects Act of 1956,[2] two based upon the governor's executive order of August 23, 1971, relating to environmental impact statements,[3] three based upon 43 U.S.C. § 521 of the federal reclamation laws,[4] and four based upon 42 U.S.C. § 4332(2)(C) of the National Environmental Policy Act.[5]

The two wells produce daily 1,200,000 gallons with a chloride content of 466 parts per million, and 1,400,000 gallons with a chloride content of 60 parts per million, respectively, and are to be fed into the system in such manner as to maintain an aggregate average chloride concentration of not more than 400 parts per million. All additional piping connections, and meters needed are to be at the expense of the corporation.

2. 43 U.S.C. § 422e details the contract requirements of a small reclamation project financed under the Small Reclamation Projects Act of 1956.

3. The Office of Environmental Quality Control in the Office of the Governor, State of Hawaii, has promulgated a "Manual for the Preparation and Processing of Environmental Impact Statements". Essentially, the executive order and the manual establish state requirements and procedures similar to the federal counterparts under the National Environmental Policy Act. See Exhibit II to the complaint and Exhibit D–1. See also Act 132, Session Laws of Hawaii 1970, effective June 22, 1970. Section 1(b) of the executive order is practically a copy of 42 U.S.C. § 4332(C)(i)–(v). The manual requires the filing of a statement of non-impact where the proposed state action or state project utilizing state funds or state lands or both, has minimal effect on the environment or may modify the function of a facility on an existing site but would not alter its original purpose. Otherwise a typical NEPA environmental impact statement is required.

4. This section appears in 43 U.S.C.A. under the legend "SALE OR LEASE OF SURPLUS WATERS, WATER POWER, STORAGE CAPACITY, AND WATER TRANSPORTATION FACILITIES" and reads as follows:

"§ 521. Sale of surplus waters generally.

Violation, if any, of the governor's executive order could only be of concern to this court in this action on some theory of pendent jurisdiction. Thus, if there is no federal basis for the complaint, the second cause of action must be dismissed. In view of the conclusions stated below, no opinion is expressed as to whether this court could enforce the governor's executive order as requested.[6]

The Secretary of the Interior in connection with the operations under the reclamation law is authorized to enter into contract to supply water from any project irrigation system for other purposes than irrigation, upon such conditions of delivery, use, and payment as he may deem proper: Provided, That the approval of such contract by the water-users' association or associations shall have first been obtained: Provided, That no such contract shall be entered into except upon a showing that there is no other practicable source of water supply for the purpose: Provided further, That no water shall be furnished for the uses aforesaid if the delivery of such water shall be detrimental to the water service for such irrigation project, nor to the rights of any prior appropriator: Provided further, That the moneys derived from such contract shall be covered into the reclamation fund and be placed to the credit of the project from which such water is supplied."

5. This is the section of the National Environmental Policy Act requiring an environmental impact statement and specifying certain matters that must be discussed.

6. The state attorney general argued that there is no role for the judiciary, federal or state, in the implementation of the governor's Executive Order in question, citing federal cases relating to presidential executive orders in other areas, namely: McDaniel v. Brown & Root, 172 F.2d 466 (10th Cir. 1949); Crabb v. Welden Bros., 164 F.2d 797 (8th Cir. 1947); Sweet v. B. F. Goodrich Co., 68 F.Supp. 782 (D.C. Ohio 1946), appeal dismissed on other grounds, 174 F.2d 1022 (6th Cir. 1949); Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469; Lodge 1647 & Lodge 1904 American Fed. of Gov. Emp. v. McNamara, 291 F.Supp. 286 (D.C.M.D.Pa.1968).

The National Environmental Policy Act would apply only if a major federal action significantly affecting the quality of the human environment is involved.[7] The state Board of Land and Natural Resources filed a statement of non-impact with the governor's Office of Environmental Quality Control.[8] That office accepted the statement as "a sufficient document." [9] Admittedly this court in a NEPA action is not bound by any such state finding,[10] but the question does not arise if the action sought to be enjoined is not federal action.[11] Thus, if there is no federal action here, the fourth cause of action must be dismissed. In view of the conclusions stated below, no opinion is expressed as to whether the action would be a major action significantly affecting the quality of human environment under NEPA.

The first cause of action alleges not federal action but a federal statute which limits the authority of defendant state official in such a manner and to such an extent that he cannot enter into the proposed agreement. The argument is that the Molokai Irrigation System was constructed pursuant to 43 U.S.C. Chapter 12 relating to reclamation and irrigation and especially 43 U.S.C. §§ 422a–422k relating to small projects, that 43 U.S.C. §§ 422e relating to project contract requirements places final authority for the maintenance and operation of the project works in the Secretary of the Interior, that only such use is authorized as is specified in that contract, and that the proposed arrangement with Kaluakoi Corporation is not an authorized use.

The court is persuaded by the memoranda of the state attorney general and the United States attorney that plaintiffs' argument in support of their first cause of action is unsound. To quote from the state attorney general's memorandum:

The Molokai Irrigation and Water Utilization Project . . . is a state water project constructed by the Department of Land and Natural Resources by special authority of Chapter 175, Hawaii Revised Statutes. The total cost of the project was $9,910,400. Approximately $5,000,000 was provided by the State . . . and the remainder was obtained from a federal loan made pursuant to the Small Reclamation Projects Act of 1956 . . .

The legislative purpose behind the Act was to provide a separate and independent means to make federal loans available for the construction of small, local water utilization projects which would be controlled and administered by state or local agencies and thus avoid the expense of federal administration.

. . . . . .

Thus, the major distinction of projects under the Act from other reclamation projects is that the Act leaves the control and management of the project in the hands of state or local organizations with federal participation limited to the role of a lending agency.

. . . . . .

The language used in the loan contract is designed only to assure repayment of the federal loan. . . . Direct federal participation is provided for only in the event the Department of Land and Natural Resources fails to comply substantially with the terms of the Loan Contract. . . . Otherwise, the Loan Contract specifically provides that jurisdiction and control rests with the Department of Land and Natural Resources . . .

7. 42 U.S.C. § 4332(C).

8. Exhibit IV to the complaint.

9. Exhibit D–2.

10. See Scherr v. Volpe, 466 F.2d 1027 (7th Cir. 1972).

11. See Gibson v. Ruckelhaus, 3 E.R.C. 1028 (D.C.E.D.Texas 1971).

The state attorney general is clearly right.[12] In addition, he points out that the Loan Contract does not prohibit uses other than for irrigation and that state statutes specifically authorize the state Board of Land and Natural Resources to contract with domestic users of water from the Molokai Irrigation System.

Thus, whatever may be the rights of the Secretary of Interior under the small reclamation project loan contract,[13] 43 U.S.C. § 422e does not give plaintiffs any grounds for invoking the jurisdiction of this court, and the first cause of action must be dismissed.

■ Federal action is required under 43 U.S.C. § 521. On the other hand, this section of the federal reclamation and irrigation laws does not apply to projects constructed under the Small Reclamation Projects Act of 1956. Plaintiffs read 43 U.S.C. § 521 as literally reaching *any* contract to supply water from *any* project irrigation system for other purposes than irrigation. But the section obviously applies only to the sale of surplus waters from federal reclamation projects administered by the United States.[14] This provision was enacted in 1920, long prior to the Small Reclamation Projects Act of 1956, and as part of a significantly different program. It is true that 43 U.S.C. § 422k provides that the provisions of the Small Reclamation Projects Act of 1956 "shall be a supplement to the Federal reclamation laws". This cannot mean that all of the other provisions of the Federal reclamation laws apply to these small reclamation projects, as will be abun-

dantly clear by a reading of these provisions. For example, 43 U.S.C. § 491 is directly contrary to 43 U.S.C. § 422d(e). A reasonable accommodation of the several provisions of these reclamation laws leads to the conclusion stated.

■ Thus, 43 U.S.C. § 521 provides no basis for invoking the Administrative Procedure Act or any other form of action designed to enforce federal statutory procedural requirements, or for a claim of federal action involving the application of NEPA, and the third cause of action must be dismissed.

■ Defendants question plaintiffs' allegations of irreparable injury. It is proposed that the agreement with Kaluakoi Corporation will contain a clause reserving to the state the right to limit or withdraw the use of the pipeline and other water facilities of the Molokai Irrigation System *at any time* during the term of the agreement when the Board of Land and Natural Resources determines that the capacity of the pipeline is not sufficient to meet the needs of the public. There will also be provisions controlling the quantity and quality of the water put into and taken out of the system by Kaluakoi Corporation. The state Office of Environmental Quality Control, Department of Hawaiian Home Lands, and Department of Health, all have concerns regarding the operation of the Molokai Irrigation System that will provide external surveillance of operations under the proposed agreement. Plaintiffs have not produced any evidence that contradicts the statement of non-impact, but have relied on predic-

12. The Loan Application Report for the Molokai Project prepared by the Division of Water and Land Development, Department of Land and Natural Resources, State of Hawaii, in April, 1961, as a basis for requesting a loan under the Small Reclamation Projects Act of 1956, was introduced into evidence as Exhibit D–4. It details the history of the project, construction of which began in February, 1957, with state money. 43 U.S.C. § 422d (e) provides specifically: "All project works and facilities constructed under sections 422a–422k of this title shall re-

main under the jurisdiction and control of the local contracting organization subject to the terms of the repayment contract."

13. The United States attorney made the point that the Secretary of Interior did not disclaim all right to intervene with respect to the uses to which the water developed by the Molokai Irrigation System might be put during the term of the repayment contract.

14. See footnote 4, *supra*.

tions of possible future conflicts and problems.[15] Under the circumstances, plaintiffs have not carried the burden of demonstrating irreparable injury to them from the proposed action.

Kaluakoi Corporation, although not joined in the original complaint, was allowed to intervene as a party defendant over plaintiffs' objection. The standing of Molokai Homesteaders Cooperative Association and Life of the Land to raise the issues set forth in the complaint was not challenged.

The foregoing shall constitute the court's findings of fact and conclusions of law as required by Rule 52, F.R.Civ. P.

A preliminary injunction is denied on the grounds that (1) it is unlikely that plaintiffs will prevail on the merits, and (2) no irreparable injury to plaintiffs has been shown.

---

15. Plaintiffs suggest that, as the area served under the Kaluakoi Corporation agreement is developed, more and more water will be needed, and these demands will be difficult if not impossible to refuse, with the result that the water needed to serve the project's originally intended areas (some 13,650 acres of irrigable lands) will not be available.

Plaintiffs also suggest that the difference in chloride content of the well water to be injected (466 ppm and 60 ppm) and of the water developed in the system (12 ppm) will result in unreasonable contamination of the system's water. These anticipated perils are certainly not immediate and in no way irreparable.